1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID ANTHONY BREAUX,

11          Petitioner,                          No. CIV S-93-0570 JAM DAD

12     vs.                                       DEATH PENALTY CASE

13   WARDEN, San Quentin State
     Prison

14                                               ORDER &

15          Respondent.                          FINDINGS and RECOMMENDATIONS

16   _____/

17          On September 30, 2004, the then-assigned District Judge directed the undersigned

18   to consider issues regarding the allegations in petitioner's claim I that post-arrest questioning

19   violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  For the reasons set forth

20   below, the undersigned recommends application of the presumption of correctness to the

21   California Supreme Court's holding that petitioner's Miranda waiver was knowing and

22   intelligent and a grant of summary judgment for respondent with respect to petitioner's Miranda

23   claim.

24   I. Background

25          On January 6, 2004, the undersigned issued findings and recommendations on the

26   parties' voluminous cross-motions for summary judgment.  (Dkt. No. 166.)  In a September 30,

1

1  2004 order, the then-assigned District Judge adopted those findings and recommendations in

2  part. (Dkt. No. 181.)  The undersigned had recommended a grant of summary judgment for

3  respondent with respect to petitioner's claim I, in which petitioner alleges that the introduction of

4  his post-arrest statement taken at the hospital while he was under the influence of morphine

5  violated his rights under the Fifth, Sixth, and Fourteenth Amendments.   (Dkt. No. 166 at 83-98.)

6  The District Judge found that the analysis of petitioner's claim I set forth in the findings and

7  recommendations overlooked the requirement that a waiver of Miranda rights be knowingly and

8  intelligently made. (Dkt. No. 181 at 2.)  The District Judge did not decide that issue but instead

9  directed the undersigned "to consider respondent's position that state court findings on whether

10  petitioner's Miranda waiver was 'knowing and intelligent' are entitled to a presumption of

11  correctness in further proceedings." (Id.)

12         In October 2005, the parties filed status reports.  (Dkt. Nos. 189, 190.)  Petitioner

13  described the status of the thirteen claims that survived summary judgment.  (Dkt. No. 189.)

14  After receipt of the answer and traverse, the court held a status conference and ordered: (1)

15  resolution of claim S-13 would be stayed pending factual development of its issues in other

16  capital cases in this court; (2) claim S-5 would be addressed in final merits briefing; (3) the

17  parties would brief the remaining issue in claim I; and (4) after resolution of claim I, the

18  undersigned would schedule an evidentiary hearing on the claims requiring factual development,

19  as set out in the January 2004 findings and recommendations.  (Dkt. Nos. 191, 200.)  The parties

20  subsequently submitted memoranda of points and authorities on the Miranda issue in claim I.

21  (Dkt. Nos. 209, 212, 213.)

22         On June 21, 2006, the undersigned heard argument with respect to petitioner's

23  claim I.  On behalf of petitioner attorney Quin Denvir appeared in person and attorney Richard

24  Neuhoff appeared by telephone.  Deputy Attorney General George Hendrickson appeared for

25  respondent.  After considering the briefs and arguments of the parties, and for the reasons set

26  forth below, the undersigned now recommends that the presumption of correctness set forth in 28

1  U.S.C. § 2254(d) be applied to the California Supreme Court's holding that petitioner's <u>Miranda</u>

2  waiver was intelligent and knowing and that the district court grant summary judgment for

3  respondent with respect to petitioner's claim I.

4  II.  <u>Petitioner's Miranda Claim - Background</u>

5            In support of this claim, petitioner alleges as follows.  After having been shot

6  twice during his arrest, he was taken to a hospital for emergency surgery.  His injuries were

7  painful.  He feared that the police might harm him and asked to have them removed from the

8  emergency room.  At 5:31 a.m. he received a 10-milligram injection of morphine.  (Am. Pet.,

9  Dkt. No. 159, at 78 (citing RT 407, 695, 709, 724-25 & 889[1]).)

10           According to petitioner, morphine operates on a person's central nervous system,

11 creating a euphoria that takes away the person's perception of pain and of danger, thereby

12 lessening the self-protective instincts.  An average person under treatment with morphine would

13 have difficulty understanding a <u>Miranda</u> advisement and perceiving the effect of information

14 given to the police, even though the person may exhibit no outward signs of intoxication and may

15 appear to understand questions and give appropriate responses.  An intravenous injection of

16 morphine has a greater effect on a patient than any other mode of administration.  An injection

17 has its peak effect on the patient about one hour after it's administered.  (<u>Id.</u> at 78-79) (citing RT

18 698, 700 & 721-25; <u>People v. Fordyce</u>, 612 P.2d 1131, 1133 (Colo. 1980)).

19           Detective Bell read petitioner his <u>Miranda</u> rights at 6:32 a.m., when the morphine

20 injection would have been having its maximum effect.  Petitioner told Bell that he would waive

21 his rights.  Bell then interrogated petitioner for approximately an hour and ten minutes and, after

22 a break of 15 to 20 minutes, for an additional 20 to 30 minutes.  The interrogation occurred prior

23 to petitioner's surgery.  Bell testified that petitioner had some difficulty focusing his attention,

24

[1] The state court record from petitioner's trial, appellate, and state habeas proceedings
25 was lodged in this court in 1993.  (<u>See</u> Dkt. Nos. 16, 20, 22, 88.)  As used herein, "RT" refers to
the trial transcript; "CT" refers to the clerk's transcript; "AOB" refers to petitioner's opening
26 brief on appeal; and "ARB" refers to petitioner's reply brief on appeal.

1    that Bell had to repeat questions, that petitioner's train of thought would wander, and that the

2    interview was terminated when petitioner no longer appeared to be responsive to questions.  (Id.

3    at 79) (citing RT 436-38, 452-54, 503-04, 514-15, 517-18 & 892).

4            Petitioner claims the prosecution failed to meet its burden of showing that his

5    waiver of his Miranda rights was knowing, intelligent, and voluntary and that his statement to

6    Bell was voluntary.  Petitioner claims the use of his statement at trial violated his rights to due

7    process and equal protection of the law, to freedom from compulsory self-incrimination, to a

8    reliable determination of his guilt or innocence of capital murder, and to a fair, reliable,

9    individualized, nonarbitrary, and adequately guided determination of the appropriateness of death

10   as the penalty for the offense of his conviction.  (Id. at 79-80.)

11        A.  State Court Proceedings

12           On October 10, 1986, petitioner filed a motion to exclude evidence of his

13   statement to Detective Bell on the basis that his Miranda waiver was not voluntary, knowing, and

14   intelligent.  (CT 1204-12.)  The trial court held an evidentiary hearing on the motion.  (CT 1246-

15   48, 1250, 1267, 1269.)  The following is the California Supreme Court's summary of the

16   evidence presented at that evidentiary hearing and of the trial court's ruling.

17           Defendant contends that the trial court erred in failing to
         suppress a statement made to police at the University of California
18       at Davis Medical Center following his arrest on the morning of
         June 19, 1984.  Defendant challenged the admissibility of the
19       statement on the ground that it was involuntary in that he lacked
         the mental capacity to waive his Miranda (Miranda v. Arizona
20       (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) rights due to
         the effect of morphine administered at the hospital.  We conclude
21       that there is ample support for the trial court's finding that the
         waiver of Miranda rights was knowing and voluntary.
22
             Defendant was arrested after a chase and standoff, in the
23       course of which he was shot in the arm and the thigh. Defendant
         was treated for an hour in the emergency room and, to reduce his
24       pain, was given an injection of morphine.  Thereafter Detective
         Bell of the Sacramento Sheriff's Department, who had
25       accompanied defendant to the hospital, advised him of his Miranda
         rights, and defendant signed and dated a form waiving the rights.
26       Following another half-hour medical examination, Bell

4

commenced his interview of defendant.  In the tape-recorded interview, which lasted about an hour and a half, defendant related his story of a Mexican hitchhiker who allegedly was left to guard the victim and instead shot her to death in a dumpster.

The medical personnel who attended to defendant before and during the interview testified at the hearing on the motion to suppress.  Dr. Gylling and Nurse Lords treated defendant in the hour prior to the Miranda advisements, and Nurse Lords was standing several feet from defendant when Bell informed defendant of his rights.

Dr. Gylling testified that defendant's wounds were not life threatening and he estimated that defendant was in moderate pain. Defendant appeared coherent, appeared to understand completely what was said to him, and gave a detailed past history.  Defendant told the doctor that he had injected heroin that day, but he showed no signs of being under the influence of heroin.  To alleviate his pain, Gylling gave defendant a "small dose" of morphine, insufficient to mask symptoms or to interfere with defendant's ability to give informed consent to surgery.  The morphine did not affect defendant's level of consciousness; he appeared awake, conscious, and aware throughout the medical examination, from 5:30 a.m., when the dosage was administered, until 6:15 a.m., when the doctor departed.  The effects of morphine last from one to two hours; the doctor testified that the effects would have decreased after he left defendant.

Nurse Lords remained with defendant until he was taken to the jail ward at 7:20 a.m.  Defendant was informed of his rights at 6:30 a.m.; he appeared alert and oriented.  She testified that the officers did not use an intimidating tone and that defendant did not appear intimidated at all.  He spoke slowly in a normal conversational voice and spoke as loudly as the officers.  The officers' interview was interrupted by a half-hour neurologic examination conducted by Dr. Gage.

Dr. Gage testified that defendant did not appear intimidated and was assertive with hospital staff; he asked a lot of questions and gave complete and in-depth answers to question posed to him. The doctor felt that defendant was competent to give informed consent to surgery.

Detective Bell interviewed defendant sometime after 7 a.m., almost two hours after the morphine injection; at that time defendant appeared to understand the questions, was responsive, and his answers were prompt, detailed, and pertinent.

Defense psychiatrist Dr. Mehtani testified, after reviewing material supplied to him by defense counsel, that it was "very difficult" for defendant to make a voluntary statement or

5

voluntarily waive his rights.  His opinion was based primarily on defendant's lack of sleep for several days, his pain and shock from the gunshot wounds, and his abuse of heroin and cocaine in the period prior to the crime.  Mehtani opined, however, that defendant's consent to surgery was knowing, intelligent, and voluntary, and he conceded that defendant was well versed in the <u>Miranda</u> rights, having exercised them in the prior week when arrested for being under the influence of heroin and while under the influence of heroin.

> The trial court ruled that the "<u>Miranda</u> waiver at the hospital was given knowingly, intelligently and voluntarily," finding that, based on the testimony of the two physicians and the nurse, "there was no question . . . concerning the competency of the defendant . . . no indication of undue pressure."  The trial court also noted that Dr. Mehtani's opinions were not supported in the record other than by the self-interested statements made to the doctor by defendant himself.

<u>People v. Breaux</u>, 1 Cal. 4th 281, 299-301 (1991).

In his automatic appeal to the California Supreme Court, petitioner argued that the trial court had erred in denying his motion to exclude evidence of his hospital statement on <u>Miranda</u> grounds. (AOB 75-102; ARB 19-26.)  Respondent argues petitioner relied solely on the trial record to support his argument on appeal.  (Dkt. No. 209 at 8.)  Petitioner argues that he also relied upon factual findings on the effects of morphine, which were recounted by the Colorado Supreme Court in <u>People v. Fordyce</u>, 612 P.2d 1131 (1980).  (Dkt. No. 212 at 5-6.)[2]

The California Supreme Court held:

> Defendant's contentions are strikingly similar to those made and rejected in <u>People v. Jackson</u> (1989) 49 Cal.3d 1170, 264 Cal.Rptr. 852, 783 P.2d 211, where the claim of incapacity or incompetence to waive <u>Miranda</u> rights was premised on defendant's physical and mental condition due to his confrontation with police officers and his ingestion of drugs.  However, there as here, there was nothing in the record to indicate that defendant did not understand the questions that were posed to him.
>
> We find no error in the trial court's ruling.

---

[2]  The extent to which petitioner alerted the state court to these factual findings is discussed in greater detail below.

1    1 Cal. 4th at 301 (some internal citations omitted).

2    III.  Petitioner's Miranda Claim - Analysis

3              When he considered the undersigned's earlier findings and recommendations

4    addressing petitioner's claim I, the then-assigned District Judge first noted that the Miranda

5    analysis tests both whether a waiver was voluntary, or "uncoerced," and whether the waiver was

6    "knowing and intelligent." (Dkt. No. 181 at 2.)  The District Judge found that the analysis set

7    forth in the January 6, 2004 findings and recommendations regarding voluntariness was correct.

8    (Id.)  However, he also found that the findings and recommendations failed to address whether

9    petitioner's Miranda waiver was made "knowingly and intelligently."  (Id.)  As noted above, the

10   District Judge then requested that the undersigned "consider respondent's position that state court

11   findings on whether petitioner's Miranda waiver was 'knowing and intelligent' are entitled to a

12   presumption of correctness in further proceedings." (Dkt. No. 181 at 2.)  Below, the undersigned

13   will address the applicability of the presumption of correctness as well as petitioner's assertion

14   that his Miranda waiver was not knowing and intelligent.

15       A.  Legal Standards

16           1.  Presumption of Correctness

17             The law in effect before passage of the 1996 Anti-terrorism and Effective Death

18   Penalty Act (AEDPA) applies to this case.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).

19   Under the version of the habeas statute[3] applicable to these proceedings, state court factual

20   findings are presumed correct unless one of eight enumerated exceptions apply.

21                 In any proceeding instituted in a Federal court by an
                   application for a writ of habeas corpus by a person in custody
22                 pursuant to the judgment of a State court, a determination after a
                   hearing on the merits of a factual issue, made by a State court of
23                 competent jurisdiction in a proceeding to which the applicant for
                   the writ and the State or an officer or agent thereof were parties,
24                 evidenced by a written finding, written opinion, or other reliable

25   _____

26         [3] All references herein to the habeas statute are to the version in effect in 1994 when
     petitioner filed his federal petition.

and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit--

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

/////

1  28 U.S.C. § 2254(d).

2          As set out in the statute, the presumption of correctness operates as follows.  First,

3  a state court conducts a hearing on the merits of a factual issue.  Second, the state court renders a

4  written decision addressing that issue.  Third, in federal court, a habeas petitioner has the

5  opportunity to show that one of the first seven enumerated statutory exceptions applies.  Derrick

6  v. Peterson, 924 F.2d 813, 823-24 (9th Cir. 1990); Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.

7  1990).  Fourth, if none of those statutory exceptions apply, then the federal habeas court

8  considers the final exception - whether the factual determination is supported by the state court

9  record.  Id.  Fifth, if the factual determination is so supported, then the federal court applies the

10  presumption of correctness.  Id.  Sixth, the petitioner may rebut the presumption by clear and

11  convincing evidence showing that the factual finding is erroneous.

12          2.  Summary Judgment

13          The undersigned set out the summary judgment standards in its prior findings and

14  recommendations and those standards will not be repeated here.  (Dkt. No. 166 at 8-12.)

15  Essentially, to obtain summary judgment in its favor on the remaining issues presented in claim I,

16  a party must demonstrate that "there exists no genuine issue as to any material fact" and that the

17  party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As noted by this court

18  previously, proceeding by way of summary judgment motion is often not a perfect fit with the

19  procedures governing habeas matters.  (Dkt. No. 166 at 7-8 n.2.)  Where there is conflict, the

20  habeas rules typically override rules used in determining a summary judgment motion.  See Rule

21  11, Rules Governing § 2254 Cases.  Thus, for instance, one commentator has observed that, "the

22  presumption of correctness . . . overrides the ordinary summary judgment principle that disputed

23  facts are to be resolved in favor of the nonmoving party."  B. Means, Fed. Hab. Manual, § 8:36

24  (2011).

25  /////

26  /////

B.  Analysis

        1.  Application of the Presumption of Correctness

        Whether a defendant "knowingly and intelligently waived his Miranda rights" is a factual issue entitled to a presumption of correctness pursuant to section 2254(d).  Derrick, 924 F.2d at 823.  Here, both the state trial court and the California Supreme Court determined that petitioner's Miranda waiver was knowing and intelligent.  The next question is whether those determinations by the state courts merit application of the presumption of correctness in these federal habeas proceedings.

        a.  Hearing on the Merits

        The state trial court conducted an evidentiary hearing on the Miranda issue raised by petitioner.  The California Supreme Court then reviewed the trial court record and the appellate briefs.  The California Supreme Court's review of the issue also constitutes "a 'hearing' within the meaning of §2254(d)."  Sumner v. Mata, 449 U.S. 539, 545-47 (1981).  See also Gallo v. Kernan, 933 F. Supp. 878, 883 (N. D. Cal. 1996) (Factual findings based on documentary evidence are presumed to be correct.), aff'd, 141 F.3d 1175 (9th Cir. 1998).  Petitioner's argument based upon the evidence adduced in People v. Fordyce with respect to the effects of morphine was not specifically mentioned by the California Supreme Court in its decision.  However, the California Supreme Court stated it was considering petitioner's challenge to his Miranda waiver based on his lack of mental capacity due to "the effect of morphine."  1 Cal. 4th at 299.

        In his opening and reply briefs on appeal, petitioner directed the California Supreme Court's attention to evidence on the effects of morphine which was adduced in a Colorado trial court and recounted by the Colorado Supreme Court in Fordyce.  In the section of his opening brief on appeal entitled "The Prosecutor Failed to Establish that Appellant was Unaffected by the Morphine," petitioner included a subheading entitled "The Medical Evidence." (AOB at 85, 89.)  Therein, petitioner discussed the decision in Fordyce and the evidence upon

1   which it was based.  (AOB at 93-95.)  That discussion included the following quote from

2   Fordyce in which the Colorado court described an "expert toxicologist's" testimony regarding the

3   "specific effects which an effective dose of morphine has on a person's central nervous system:"

> "[Morphine] creates a euphoria which takes away a person's
> perception of pain . . . .  [A]lthough a patient may exhibit no
> outward signs of intoxication, an effective dose of morphine takes
> away a patient's perception of danger, thereby lessening self-
> protective instincts.  A second effect of morphine . . . is
> interference with short term memory. . . .  [A]n average person
> under treatment with morphine would have difficulty
> understanding a Miranda advisement and perceiving the important
> effect of information given to the police."

9   (AOB at 94) (quoting Fordyce, 612 P.2d at 1133) (emphasis by petitioner).  Therein, petitioner

10  explained that the Colorado Supreme Court, in a situation analogous to his own, had determined

11  that the defendant was under the influence of morphine and, despite her apparent coherence, did

12  not voluntarily waive her Miranda rights.  (AOB at 94.)  Petitioner reiterated his focus on the

13  decision in Fordyce in his reply brief on appeal.  (ARB at 20-26.)

14          Respondent argues that because a state appellate proceeding is limited to the state

15  court trial record, the California Supreme Court would not have considered the evidence

16  described in Fordyce.  However, this court notes that respondent did not object to the California

17  Supreme Court's consideration of that evidence and the California Supreme Court gave no

18  indication that it was refusing to consider it.  The statements in the Fordyce decision regarding

19  the effects of morphine were an important aspect of petitioner's argument on the Miranda issue

20  in state court.  Without some indication from the California Supreme Court that it refused to

21  consider those statements, this court is compelled to consider them as part of the record that was

22  before the California Supreme Court when it addressed the Miranda issue raised by petitioner on

23  appeal.

24              b.  Written Decision

25          The California Supreme Court rendered a written decision addressing the

26  Miranda issue.  People v. Breaux, 1 Cal. 4th 281, 301 (1991).  The state court clerk's transcript

1  (CT 1269) provides sufficient written indicia of the trial court's decision.  See Wainwright v.

2  Witt, 469 U.S. 412, 430 (1985).

3                                    c.  Exceptions

4            Petitioner argues that the presumption of correctness should not apply to the state

5  trial court's determinations in connection with the resolution of the Miranda issue in his case

6  because he presented new evidence to the California Supreme Court that was not before the trial

7  court.  Specifically, petitioner points to his discussion of the decision in People v. Fordyce, 612

8  P. 2d 1131 (Colo. 1980) in his petition filed with the California Supreme Court.  Petitioner

9  contends that his presentation of Fordyce to the California Supreme Court either renders the

10  presumption of correctness inapplicable to the state trial court's findings with respect to the

11  Miranda waiver in his case or causes this case to fall within one of the following exceptions to

12  the application of the presumption:

13              (1) the fact finding or hearing procedures employed by the state
                court were not "full, fair and adequate" (2) "the material facts were
14              not adequately developed at the State court hearing," and (3) "in
                consideration of such part of the [state court] record as a whole,"
15              the state trial court's "factual determination is not fairly supported
                by the record."

16

17  (Dkt. No. 212 at 7-8 n.8.)

18            As noted above, even if petitioner did present new evidence in connection with

19  the Miranda issue to the California Supreme Court, that does not defeat application of the

20  presumption of correctness to the factual findings made by the state courts.  This court is not

21  limited to applying the presumption to findings made only by a state trial court.  Rather, the

22  federal habeas court also applies the presumption of correctness to the factual findings of a state

23  appellate court.  See Sumner, 449 U.S. at 545-47; Wainright v. Goode, 464 U.S. 78, 85 (1983);

24  Tinsley, 895 F.2d at 525; see also Kesser v. Cambra, 465 F.3d 351, 385 (9th Cir. 2006).

25  /////

26  /////

d.  Exception No. 8

The federal habeas court must next determine whether the record before the state court, as a whole, supports its determination as to the factual issue in question.  As described above, in its decision the California Supreme Court set forth the evidence adduced at the trial court's evidentiary hearing.  Petitioner highlights the following evidence as constituting the basis for his claim that the prosecution failed to meet its burden of showing that his Miranda waiver was knowing and intelligent:

(a) Petitioner made the statement at a hospital shortly after he had been shot twice. (Dkt. No. 212 at 1.)

(b) Petitioner's waiver occurred at the time the morphine would have had its peak effect.  (Id.)

(c) As described by the court in Fordyce, morphine lessens a patient's self-protective instincts and makes it difficult "to perceive the important effect of information given to the police."  (Id.)  "These morphine-induced impairments occur even though the patient may exhibit no outward signs of intoxication and may even appear to understand questions and may give appropriate responses."  (Id.)

(d) A comparison of petitioner's behavior before and after administration of the morphine shows that his self-protective instincts were lessened.  Prior to the drug, petitioner expressed a "continuing fear" of the police officers.  Afterwards, he became "quite docile and cooperative."  (Id. at 2.)

The court finds that the evidence before the California Supreme Court supported its decision that petitioner's waiver was knowing and intelligent.  As described above, two doctors and a nurse who were present, or very near, at the time petitioner signed the Miranda waiver, all testified that petitioner was alert and oriented.  Petitioner points to two sources of evidence in opposing the testimony of medical professionals who were present when he signed the waiver; Dr. Mehtani (who testified as an expert for the defense at petitioner's trial) and an

13

1  unidentified expert whose opinion was cited by the Colorado Supreme Court in the Fordyce

2  decision.  However, in his testimony at petitioner's trial Dr. Mehtani did not mention the

3  administration of morphine as a basis for his opinion that petitioner was not competent to waive

4  his Miranda rights.  (RT 996:23 - 997:7.)  As to the second "source" relied upon by petitioner,

5  the Fordyce decision by the Colorado Supreme Court has no precedential value in connection

6  with the California state court proceedings at issue in these federal habeas proceedings.

7  Moreover, examination of the Fordyce opinion reflects that the expert's opinion relied upon in

8  that case regarding the effects of morphine would not necessarily apply to petitioner's case in any

9  event.  In this regard, the defendant in Fordyce had been given morphine at "regular intervals" for

10  two days before she waived her Miranda rights.  612 P.2d at 155.  The expert toxicologist in that

11  case had opined that the "defendant's morphine dosage" was "sufficient to achieve a steady state

12  of tissue saturation or morphine intoxication."  Id.  It is not at all clear from the opinion in

13  Fordyce whether that expert's opinion, cited repeatedly by petitioner here, regarding the effects

14  of morphine would apply equally to a patient who had been administered a single dose of

15  morphine, as was petitioner in this case.  It is clear, however, the defendant in Fordyce was in a

16  much different medicated state than petitioner was here at the time of his Miranda waiver.

17             Consideration of two other factors support the California Supreme Court's

18  determination that petitioner's waiver of his Miranda rights was knowing and intelligent.

19  Moreover, the importance of both factors with respect to such a determination has been

20  recognized by the Ninth Circuit.  First, a written waiver "in particular is strong evidence that the

21  waiver is valid."  Derrick, 924 F.2d at 824.  See also North Carolina v. Butler, 441 U.S. 369, 373

22  (1979) ("An express written or oral statement of waiver of the right to remain silent . . . is usually

23  strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to

24  establish waiver."); United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986).  Second,

25  the fact that petitioner had suffered prior arrests and had been given Miranda warnings previously

26  also "suggest that [he] understood his Miranda rights."  Derrick, 924 F.2d at 824.  See also

14

1  United States v. Arciniega, 569 F.3d 394, 399 (8th Cir. 2009) (Defendant's "prior criminal record

2  suggests that he was cognizant of the protections afforded by the legal system."); United States v.

3  Pruden, 398 F.3d 241, 246 (3d Cir. 2005) (Defendant "was familiar with his rights, having been

4  involved in the justice system on numerous prior occasions."); United States v. Palmer, 203 F.3d

5  55, 61 (1st Cir. 2000) (The district court's determination that a waiver was knowing and

6  intelligent affirmed where it was based, in part, on the finding that the defendant "had a record of

7  sixteen prior arrests" and therefore "comprehended the significance of a Miranda waiver.")

8          Petitioner also cites to testimony in the record in support of his assertion that he

9  became "quite docile and cooperative by the time he was given his Miranda rights." (Dkt. No.

10  212 at 5-6) (citing RT 481, 503-04, 517 & 514).  However, none of the testimony cited by

11  petitioner support his assertions in this regard.  Rather, the record reflects that Officer Bell

12  testified as follows.  The tape recording of Bell's interview of petitioner contained a number of

13  pauses because petitioner was not talking, "was speaking somewhat quietly," or was receiving

14  medical treatment.  (RT 481:11-22.)  Officer Bell read petitioner his Miranda rights and

15  immediately thereafter asked petitioner if he wished to waive them.  (RT 503:12 - 504:11.)

16  Officer Bell's report did not include the facts that he interviewed petitioner twice in separate

17  areas of the hospital and that petitioner's "condition changed overtime while [he was]

18  interviewing him."  (RT 504:12-25.)  According to Officer Bell, petitioner started "nodding off"

19  at some point during the interview and sometimes spoke in a "soft voice."  (RT 517:1-19.)

20  Finally, near the end of the interview petitioner spoke slowly and seemed to have difficulty

21  focusing his attention  (RT 514:14-20, 25-27) and Officer Bell had to repeat his questions for

22  petitioner.  (RT 514:21-24.)  None of this testimony, however, indicated that when he waived his

23  Miranda rights, petitioner was "docile" or more cooperative than he had been earlier in the

24  interview by Officer Bell.  In fact, the testimony pointed to by petitioner that he became quiet

25  referred to petitioner's behavior at the end of Officer Bell's interview, well over an hour after

26

15

1    petitioner had signed the Miranda waiver.[4]

2           For these reasons, this court concludes that the record before the California

3    Supreme Court, as a whole, supports its determination that petitioner's Miranda waiver was

4    knowing and intelligent.

5                         e. Application of the Presumption of Correctness

6           Based upon the analysis set forth above, all statutory grounds for application of

7    the presumption of correctness to the California Supreme Court's determination that petitioner's

8    Miranda waiver was knowing and intelligent are met in this case.  That court rendered a written

9    decision after a hearing on the merits.  Petitioner has not proved any exceptions to application of

10   the presumption of correctness.  Finally, this court finds the California Supreme Court's decision

11   is supported by the relevant evidence that was before it with respect to the knowing and

12   intelligent character of petitioner's Miranda waiver.  The next question, then, is whether

13   petitioner has demonstrated the existence of a material disputed factual issue and should be given

14   the opportunity to rebut the presumption.

15                         2. Summary Judgment

16          Petitioner points to his arguments summarized above, buttressed by the expert

17   testimony relied upon by the Colorado Supreme Court in Fordyce, as showing that the morphine

18   he was administered at the hospital rendered him unable to knowingly and intelligently waive his

19   Miranda rights.  Given this court's application of the presumption of correctness to the California

20   Supreme Court's holding rejecting that contention, petitioner is not entitled to summary

21   judgment in his favor on this issue.  The next question is whether petitioner has demonstrated the

22   existence of a genuine issue of disputed material fact regarding his competence to waive his

23

24          [4]  Officer Bell testified that he interviewed petitioner for about an hour and ten minutes
      and then took a fifteen to twenty minute break to speak to his sergeant.  (RT 452:17 - 453:9.)
      When Officer Bell resumed the interview, he found petitioner had been moved from the
25    emergency room to "a general ward type room."  (RT 453:15-20.)  Officer Bell testified that
      petitioner became slower to respond to questions during this second part of the interview.  (RT
26    454:12-20.)

1    <u>Miranda</u> rights and that, if given the opportunity, he could rebut the presumption of correctness

2    by clear and convincing evidence.  While a somewhat closer question, this court nonetheless

3    concludes that petitioner has failed to make the showing required to preclude the granting of

4    summary judgment in favor of respondent in this respect as well.

5                  Petitioner has argued that, if allowed, he would put on expert testimony to show

6    that the administration of morphine rendered him unable to knowingly and intelligently waive his

7    <u>Miranda</u> rights.  To show a "genuine" issue of disputed material fact on summary judgment, it is

8    petitioner's burden to come forward with "specific facts" supported by "evidence" the content of

9    which is admissible.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

10   (1986).  <u>See</u> <u>also</u> Fed. R. Civ. P. 56(e); <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir.

11   2003) (distinguishing between content and the form of the evidence presented on summary

12   judgment).  Here, the only proffer petitioner makes regarding the testimony he would present on

13   this issue, if allowed, is the expert testimony adduced in the <u>Fordyce</u> case.  However, as

14   discussed above, the expert in that case testified regarding the effects of morphine in a situation

15   in which the defendant had been given sufficient dosages of morphine over an extended period of

16   time that she had reached a point of "morphine intoxication," according to the expert.

17                  Based upon the limited nature of the expert opinion described in the Colorado

18   Supreme Court's decision in <u>Fordyce</u>, it is not possible to determine whether the expert opinion

19   rendered in that case regarding morphine's effects would apply at all where an individual had

20   received only a single dose of morphine, as petitioner had at the time he signed the <u>Miranda</u>

21   waiver.  Under typical summary judgment standards, in order to demonstrate a genuine issue the

22   party opposing summary judgment "must do more than simply show that there is some

23   metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

24   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

25   <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  Here, the limited nature of the medical expert

26   opinion set out in <u>Fordyce</u> does not give this court any confidence that petitioner would be able

17

1   to show by clear and convincing evidence that the holding of the California Supreme Court that

2   his <u>Miranda</u> waiver was knowing and intelligent is incorrect.  <u>See</u> <u>Addisu v. Fred Meyer</u>, 198

3   F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable . . .

4   does not present a genuine issue of material fact" but rather there "must be enough doubt for a

5   'reasonable trier of fact' to find for [the opposing party] in order to defeat the summary judgment

6   motion.")

7            Petitioner has not demonstrated the existence of a disputed issue of material fact

8   with respect to whether his <u>Miranda</u> waiver was knowing and voluntary.  The District Judge

9   previously assigned to this action has already ruled that respondent was entitled to summary

10  judgment on the issue of the voluntariness of that waiver.  Having considered both whether the

11  state court findings that petitioner's <u>Miranda</u> waiver was 'knowing and intelligent' are entitled to

12  a presumption of correctness, as well as whether petitioner has demonstrated the existence of a

13  material factual issue requiring that he be given the opportunity to rebut that presumption, and

14  for the reasons set forth above, the undersigned recommends that summary judgment be granted

15  in favor of respondent with respect to petitioner's claim I in its entirety.

16                              CONCLUSION

17            Accordingly, good cause appearing, IT IS HEREBY RECOMMENDED as

18  follows:

19            1. That the district court apply the presumption of correctness set forth in 28

20  U.S.C. § 2254(d) to the California Supreme Court's determination that petitioner's <u>Miranda</u>

21  waiver was intelligent and knowing; and

22            2. That the district court grant summary judgment for respondent on petitioner's

23  claim I.

24            These findings and recommendations are submitted to the United States District

25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

26  one days after being served with these findings and recommendations, any party may file written

1    objections with the court and serve a copy on all parties.  Such a document should be captioned

2    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

3    shall be served and filed within fourteen days after service of the objections.  The parties are

4    advised that failure to file objections within the specified time may waive the right to appeal the

5    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6                         In addition, IT IS HEREBY ORDERED as follows:

7                         1. The court is aware that discovery has been completed in other federal habeas

8    cases with respect to claims that California's capital sentencing scheme fails to adequately

9    narrow the class of persons eligible for the death penalty (the "narrowing claims").  Therefore,

10   within twenty-one days of the date of this order, petitioner shall inform the court how he wishes

11   to proceed with respect to his claim S-13 in this action.

12                        2. Within twenty-one days of the district court's final order on these findings and

13   recommendations, the parties shall file statements regarding the scope of the evidentiary hearing

14   discussed by the parties at the November 7, 2005 status conference and set out in the

15   undersigned's January 6, 2004 findings and recommendations.  (Dkt. Nos. 166, 200.)  After those

16   statements are filed, the court will schedule a status conference in this action.

17   DATED: July 9, 2012.

18

19                                                   DALE A. DROZD
20                                                   UNITED STATES MAGISTRATE JUDGE

21   dad1.capital
     breaux claim I.fr
22

23

24

25

26